IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF NEW
JERSEY CAMDEN VICINAGE

| | |
|---|---|
| LANISE L. SUTTON, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, <br><br> Defendant. | Civil No. 19-15667 (RMB) <br><br> **MEMORANDUM OPINION & ORDER** |

**RENÉE MARIE BUMB**, UNITED STATES DISTRICT JUDGE:

This matter comes before the Court upon an appeal by Plaintiff Lanise Sutton ("Plaintiff") from the final determination of the Commissioner of Social Security, denying Plaintiff's application for Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security Act. For the reasons set forth below, the Court **VACATES** the decision of the Administrative Law Judge ("ALJ") and **REMANDS** for further proceedings consistent with this Memorandum Opinion and Order.

I. **PROCEDURAL HISTORY**

On July 7, 2015, Plaintiff filed a Title XVI application for SSI disability benefits. [Administrative Record ("A.R."), p. 54-61]. Plaintiff alleged a period of disability, beginning on August 1, 1985, claiming that she suffers from a learning

disability, speech problems, and diabetes. [Id.]. Plaintiff's application was denied, initially on February 25, 2016, and again upon reconsideration on May 24, 2016. [Id., p. 15]. On August 31, 2018, Plaintiff participated in a video hearing with Administrative Law Judge Stanley K. Chin.  The ALJ heard testimony from Plaintiff, her attorney, Kevin Liebkemann, and an impartial vocational expert, Bassey A. Duke. [Id.].

The ALJ issued a decision on September 25, 2018, denying Plaintiff's application based on his determination that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." [Id., p. 24].  The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision final. [Id., p. 1]. Plaintiff now brings this action requesting judicial review of the ALJ's decision.

## II.    STANDARD OF REVIEW

When reviewing a final decision of an ALJ regarding disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." Hess v. Comm'r Soc. Sec., 931 F.3d 198, n. 10 (3d Cir. 2019); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Cons. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Albert Einstein Med. Ctr. v. Sebelius, 566 F.3d 368, 372 (3d Cir. 2009).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. Hess, 931 F.3d at n. 10 (citing Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). The claimant bears the burden of proof at steps one through four, and the Commissioner of Social Security at step five. Hess, 931 F.3d at 201 (citing Smith v. Comm'r of Soc. Sec., 631 F.3d 632, 634 (3d Cir. 2010). Recently in Hess, 931 F.3d at 201-02, the Third Circuit described the ALJ's role in the Commissioner's inquiry at each step of this analysis:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. Id. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." Id. §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" Smith, 631 F.3d at 634. If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform

4

his "past relevant work." Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." Id. §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.

At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience [.]" Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." Podeworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

### III. FACTUAL BACKGROUND

The Court recites only the facts that are necessary to its determination on appeal, which is narrow. Plaintiff, who was eleven years old at the alleged onset date, claims disability on the basis of severe mental illnesses, including borderline intellectual functioning, major depressive disorder, and borderline personality disorder. Plaintiff also suffers from diabetes and obesity. At the administrative hearing Plaintiff testified that she has been classified as learning disabled since childhood and qualified for SSI disability benefits.

Plaintiff testified that she stopped receiving benefits as a teenager, in 1992, because she was incarcerated for manslaughter. She was released from prison 23 years later, in

2015.  Although Plaintiff received mental health counseling while in prison, she struggled to interact appropriately with other inmates and prison guards.  Plaintiff testified that she had fewer problems after she adapted to the prison environment, but continued to struggle with anxiety, suicidal thoughts, nervousness, and a stutter. [A.R., p. 36-37].

Plaintiff stated that she was never employed before her period of incarceration and was unable to hold jobs following her release from prison. [A.R., p. 35].  After her release in 2015, Plaintiff went to a halfway house where she received some training in food service and prep. [A.R., p. 37].  Plaintiff testified that she got a job at Burger King, but was fired after only two days because it took her "two to three times longer than everyone else to make a burger." [A.R., p. 38-39]. After losing her job at Burger King, Plaintiff obtained a housekeeping job, but was once again fired after less than one week.  Plaintiff stated that the company expected her to clean a room in thirty minutes, but it took her "an hour or an hour and a half." [A.R., p. 39-40]. Plaintiff explained that for her whole life, "it just takes [her] a little bit longer to do stuff" than other people.[A.R., p. 39].

Plaintiff testified that she goes to Legacy Treatment Services for weekly one-on-one counseling and medication to help with her anxiety, depression, and sleeping, and the

medication helps but she "still [has] problems". [A.R., p. 43-45].  The medical records from Plaintiff's treatment center, Legacy Treatment Services, corroborate Plaintiff's testimony. Plaintiff's psychiatric evaluation indicates diagnoses of Bipolar II disorder, unspecified intellectual disabilities, diabetes, and hypertension. [A.R., p. 486-87].  Treatment notes state that Plaintiff has indicated that medication is helpful for mood and anxiety and for impulse control and aggression. [A.R., p. 489].

## IV.    ALJ'S DETERMINATION

After examining Plaintiff's application for disability benefits, the ALJ conducted the five-step inquiry and concluded that Plaintiff was not disabled.  At Step One of the analysis, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since her application date of July 7, 2015.  At Step Two, the ALJ found the following severe impairments: borderline intellectual functioning, major depressive disorder, borderline personality disorder. [A.R., p. 17].  The ALJ found these medically determinable impairments to "significantly limit the ability to perform basic work activities as required by SSR 85-28." [A.R., p. 18].  Although the ALJ noted that Plaintiff has received treatment for diabetes and obesity, the ALJ found those impairments to be non-severe.

At Step Three, the ALJ found the Plaintiff's impairments did not meet the severity of one of the Listed Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [A.R., p. 18]. At Step Four, the ALJ determined Plaintiff's RFC as follows:

> "[T]he claimant has the residual functioning capacity to perform a full range of work at all exertional levels but with the following exertional limitations: the claimant is limited to short and simple routine instructions and tasks, performed in a work environment free of fast-paced production requirements, and involving only simple work-related decisions and infrequent and gradual workplace changes. The claimant requires work that is isolated from the public, and is limited to occasional interaction with coworkers and supervisors."

[A.R., p. 21].

In making this determination, the ALJ found that Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms," but found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms "not entirely consistent with the medical evidence and other evidence in the record." [A.R., p. 21].

In support of this RFC formulation, the ALJ cited to treatment records which showed "intact cognition, normal judgment and insight, and no minimal observation of depression or anxiety symptoms". [A.R., p. 21]. The ALJ also relied upon observations from Plaintiff's treatment providers who stated

8

that Plaintiff was "cooperative and friendly," which the ALJ deemed "inconsistent with her allegations that she could not interact with others in the workplace." [A.R., p. 22]. Weighing the evidence, the ALJ determined a demonstration of Plaintiff to "at least perform the work as outlined in her residual functional capacity."

Because Plaintiff lacked any past relevant work experience, the ALJ advanced to Step Five, where he concluded that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." [A.R., p. 23-24]. The ALJ found that when considering Plaintiff's RFC, age, education, and work experience, there were jobs that exist in significant numbers in the national economy that she could perform, specifically as a "hand packager," a "dishwasher," or a "cleaner." [A.R., p. 25]. As a result, the ALJ determined that Plaintiff was not disabled.

## V.  DISCUSSION

On appeal to this Court, Plaintiff asserts that the ALJ failed to appropriately consider critical portions of testimony elicited from the Vocational Expert ("VE") at the administrative hearing. In particular, Plaintiff notes that the ALJ failed to address the VE's testimony that a person with Plaintiff's exertional limitations would be unable to perform the jobs

9

identified by the VE if they "cannot tolerate more than occasional contact with supervisors and co-workers in the first 30 days of employment, in other words, during orientation, training, and gaining proficiency in performing the work function."  Despite this testimony, and the fact that the RFC promulgated by the ALJ notes that Plaintiff should be "limited to occasional interaction with coworkers and supervisors," the ALJ still concluded that Plaintiff would be able to perform the jobs listed by the VE.

 Based on the ALJ's failure to provide any explanation as to how Plaintiff could perform the jobs listed by the VE, if she would be unable to get through training, the Court cannot find that the ALJ's decision is supported by substantial evidence. The Third Circuit has defined substantial evidence as "such relevant evidence as a reasoning mind might accept as adequate to support a conclusion." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983) (citing Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).

 Although the ALJ may have reasons for concluding that Plaintiff would be able to successfully gain employment in one of the listed professions, despite the apparent contradiction between Plaintiff's RFC and the VE's testimony, those reasons are not adequately articulated in the decision.  Significantly, the "Third Circuit has held that access to the Commissioner's

reasoning is [] essential to a meaningful court review." Sanford v. Comm'r of Soc. Sec., 2014 WL 1294710, at *2 (D.N.J. Mar. 28, 2014)(citing Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978)); see also Stockett v. Comm'r of Soc. Sec., 216 F. Supp. 3d 440, 456 (D.N.J. 2016)("The Third Circuit 'requires the ALJ to set forth the reasons for his decision.'")(quoting Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 123 (3d Cir. 2000).

In this instance, the Court is puzzled as to how Plaintiff could be expected to perform the jobs suggested, when the VE explicitly stated that a person with Plaintiff's exertional limitations would not be able to get through initial orientation and training for those jobs if they were limited to only occasional interaction with co-workers and supervisors.[1] The same lack of clarity exists for the Vocational Expert's testimony that a person whose "work pace is twice as slow as the expectation" would not be able to do any of the jobs identified during the ALJ's examination. [A.R., p. 51].

## VI.  CONCLUSION

On the present record, faced with testimony from the VE that seems to directly contradict Plaintiff's ability to work in

---

[1] On this point, it is worthy of further discussion and analysis that Plaintiff was unable to get past the first week of her attempted jobs at Burger King and in housekeeping.

11

the suggested professions at the promulgated RFC, this Court is unable determine whether the ALJ's decision was supported by substantial evidence because it fails to include the necessary explanation and reasoning.

**ACCORDINGLY, IT IS** on this, the **31st** day of **July 2020**, hereby

**ORDERED** that the ALJ's decision, denying Plaintiff's application for Social Security benefits, is **VACATED** and **REMANDED** for further proceedings consistent with this Memorandum Opinion and Order; and it is further

**ORDERED** that the Clerk of the Court shall **CLOSE** this case.

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE

12